UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————X

MARTINE'S SERVICE CENTER, INC. AND
MICHAEL C. MARTINE,                                    REPLY
       PLAINTIFFS,                  AFFIDAVIT
              IN SUPPORT OF
              MOTION

     VS

THE TOWN OF WALLKILL, JOHN WARD, individually        CASE NO:
and as Supervisor of the Town of Wallkill, ROBERT HERTMAN,   07 CV 6327 (SCR)
individually and as Chief of Police of the Town of Wallkill,
EUGENE JAQUES, individually and as Building Inspector of
the Town of Wallkill; DON KIMBLE, individually and as
Deputy Building Inspector of the Town of Wallkill,
WALTER J. BARRETT, individually and as Assistant
Building Inspector of the Town of Wallkill, and JOHN DOES I, II,
and III. Individually and as officers of the Town of Wallkill,

      DEFENDANTS.

—————————————————————X

STATE OPF NEW YORK
      SS:
COUNTY OF NEW YORK

STEPHEN L. OPPENHEIM, being duly sworn, deposes and says:

1. Plaintiffs' motion objects to 60 improper denials in Defendants' Answer. Mr.
   Sokoloff addresses only 18 (30%) of these improper denials.

2. The failure to address over two-thirds of the frivolous and improper denials
   should, of itself, cause this Court to grant the motion in its entirety.

3. Beyond that, it is difficult to know how to respond to Defendants' Declaration and
   Memorandum of Law. My initial reaction is to be outraged at Mr. Sokoloff's
   cavalier sense of an attorney's obligation to the Court, if to no one else. On the

other hand, I do not want to add to the personal vituperation that this Court must be over-burdened with.

4. First, is there such a thing as a "Declaration" in response to a motion? Is it an affidavit or some hybrid? Is there some provision in the FRCP or in the local rules which permit such a response? I do not believe so. (I confess that I am at a disadvantage in this regard. Defendants' Declaration and Memorandum were electronically filed with the Clerk at 4:04 and 4:06 P.M. on Friday, June 13, 2008. That is minutes after my law library, at the New York City Bar [ex-Association of the Bar of the City of New York] closed for the weekend. I am flying out of JFK at noon on Monday and will not return until Thursday night, just before the conference on Friday morning. That means I will just have time before leaving for the airport to have this affidavit notarized, but will not have time to research the question.),

5. Second, is there such a thing under federal practice of an attorney's affirmation (declaration) under penalty of perjury or is that merely a matter of New York State procedure? I think the latter, but again am stymied in researching the problem by the exigencies of time.

6. Third, is it permitted under federal practice to serve a memorandum which is based on facts not contained in the affidavits (declarations)? Again, I think not, but am unable to cite authority because of the time problem.

7. It is respectfully submitted that Defendants' Declaration and Memorandum merely continue their unreasonable unwillingness to address the truths of this case.

8. This is not the first time that the Defendant Town has tried to deny to this Court the facts established by the Findings of Fact, Conclusions of Laws, and Judgment, which are Exhibit 1 to the Complaint.

9. In the action before Chief Judge Brieant, Plaintiffs' complaint made the same allegations regarding their first removal from the towing list that are made in this action. The complaint, like the present one, was based on the Findings of Fact, Conclusions of Law, and Judgment, Exhibit 1 to the Complaint.

10. Defendants' answer in the first action took the same approach that Defendants have done in this action. They denied facts that had already been established in the state litigation by the Findings of Fact, Conclusions of Law, and Judgment. Exhibit 1 to the Complaint. A copy of that Answer is attached hereto, made apart hereof, and marked Exhibit 4.

11. On April 7. 1994 I wrote to the Town's then attorney a letter similar to the one I sent to Mr. Sokoloff, Exhibit 2. A copy of that1994 letter is attached hereto, made a part hereof, and marked Exhibit 5.

12. The Town's reaction in 1994 was different however. It recognized the binding nature of the facts established in the state action.

13. The Town made a motion in the state court to be relieved of some of the more damaging Findingsa and Conclusions.

14. The state court denied the Town's motion "in all respects". A copy of its decision-order is attached hereto, made a part hereof, and marked Exhibit 6.

15. The Defendants' present position of studied ignorance is not a reasonable investigation of the situation they face in having to answer the Complaint herein.

16. The Defendants' present obstructionism flies directly in the face of admissions made by the Town in its Answer to Plaintiffs' first federal action, Exhiibit 4, in which the Town admitted that

   a. "…on and prior to March 25, 1993, plaintiff Martine's Service Center, Inc. was on the rotating car towing service list so maintained by the defendants." Paragraph 3.

   b. "…on March 25, 1993, defendant Cummings, acting as Supervisor of defendant Town of Wallkill, within The scope of his authority, orally removed plaintiff Martine's Service Center, Inc. from the car towing list." Paragraph 4,

   c. "…that no written charges were brought against the plaintiff." Paragraph 5.

   d. "…that no hearing was held." Paragraph 6.

   e. "…that there were no written standards for removal of members of the car towing service list from the list." Paragraph 8.

    f.    "…defendant Cummings, as Supervisor and chief executive officer directly participated in removing plaintiff's name from the towing list," Paragraph 10.

    g.    "…the so-called 'rotating list' of car towing services used by the Town of Wallkill was solely for its own use in attempting to distribute towing referrals equitably to towing services within the Town and was not an official list established pursuant to law or ordinance…" Paragraph 12 (emphasis supplied)

17. Defendants' response to this motion also flies in the face of the affidavit of its supervisor, William Cummings, that the Town served in the state action, on its motion to modify the Findings and Conclusions.. As does the Town's Answer (please see paragraph 16 g, supra and Exhibit 4), the Cummings affidavit gives the informal history of the original informal towing list created by him. The Cummings affidavit also acknowledges the truth of others of Plaintiff's allegations, which the Defendants' now seek to deny":

    "Any individual in the Town who had a towing company could be placed on the list without qualifications as long as he maintained a business within the Town. There were no requirements to be on the list…no rules or regulations were adopted governing said list…. anyone could be placed on the list…The Town had no ordinance or local laws governing this towing list…" pp. 1-2.

18. In its memorandum of law on its motion to modify the Findings and Conclusions, the Town told the court:

    "Plaintiff corporation was on a courtesy towing list in the Town of Wallkill, New York which was adopted by the Town…Any towing company in the town was invited to be on the list; no qualifications were required;…and there was no writing governing the same." First page.

19. Defendant Town cross-moved for summary judgment before Chief Judge Brieant in the prior federal action. In his moving affirmation, dated December 22, 1994, the Town's attorney, Monte J. Rosenstein, advised the Court:

> "As Mr. Cummings indicates, he simply adopted the use of the towing list as a courtesy to tow truck operators within the town... Any towing company in the Town could request to be on the list... No qualifications had to be met... no rules or regulations were adopted governing the same. The list was totally <u>informal</u> and anyone could be placed thereon..."<u>First page-second page.</u>  (emphasis supplied)

20. Also in support of its cross-motion, the Town submitted the affidavit of Williams Cummings, sworn to December 18, 1994, in which Mr. Cummings avers, among other things:

> "... I requested the Police Department to keep a rotating list of operators called to the scene of accidents so that every towing company would have an equal share of towing jobs." <u>First page.</u>

21. In connection with its cross-motion, Defendant Town filed its "Statement of Defendant Pursuant to General Rule 3 (g)" in which it advised the Court:
   a. "That at all times hereinafter mentioned, the Town of Wallkill maintained a courtesy towing list which was open to any individual or business within the town of Wallkill." <u>Para. 2.</u>
   b. "That Plaintiff, Martine's Service Center, Inc. was on said list and was routinely called by members of the police department on a rotating basis with other Towing companies.". <u>Para. 4.</u>
   c. "That there were no rules or regulations adopted by the town governing the list ..." <u>Para. 6.</u>x

22. Stunningly, but without any acknowledgement from Mr. Sokoloff, the Defendants attempt to justify only a limited number of their frivolous denials, less than one-third. Mr. Sokoloff makes no mention of the following denials which I pointed out in my moving affidavit to be frivolous and improper: 21, 22, 23, 38, 41, 44, 46, 51, 54, 56, 57, 59, 60, 61, 62, 63, 64, 65, 66, .68, 69, 70, 71, 72, 74, 75, 76, 77, 78, 83, 84, 85, 86, 87, 89, 90, 92, 93, 94, 95, 96, and 97.

23. The failure to even address these 42 improper denials should, of itself, cause this Court to grant this motion in its entirety.

24. Even as limited to only some of the improper items, the Answer is patently inadequate.

25. Paragraph 2a of the Declaration. Defendants' objection to the use of the term "informal" is totally in bad faith. First of all, the Defendant itself has used "informal", as well as "not official" and "courtesy", to refer to the list before the adoption of Chapter 225 in 1999, in its own prior submissions to this Court and the state court. Second, the Town has had no difficulty identifying its own "informal" towing list in those prior submissions. Third, the designated list is factually identified, in the very language admitted by and used by the Town in its submissions, Fourth, the "informal" list is further defined in paragraph 18 as one referred to by the Defendant as the "unofficial list".

26. Paragraph 2 b of the Declaration: This paragraph contains two separate frivolous statements in one sentence. First, the Town has admitted in numerous documents that Supervisor Cummings created the car service towing list. (Please see, for example, paragraphs 19 and 20, supra.) (Please also see Finding of Fact 7. Exhibit 1 to the Complaint.) Second, Supervisor Cummings may not be a party to both actions, but Defendant Town was and is. The Town cannot avoid the effect of its own prior admissions and submissions just because it now has different co-defendants.

27. Paragraph 2 c of the Declaration: The Town has repeatedly affirmed that the very purpose of creating the car service towing list was to provide towing operators an equal opportunity to be recommended by the Town to motorists who required towing services. Finding of Fact 6 specifically provides that the list was created to establish which towing operator was "to be called to service motorists who require towing services."

28. Paragraph 2 d of the Declaration: At the very best Defendants' denial and explanation are a negative pregnant. Nothing in Chapter 225 justifies denying that the towing list is open to all rowing operators "in" the Town. A copy of Chapter 225 is attached hereto, made a part hereof , and marked Exhibit 7.

29. Paragraph 2 e of the Declaration: Since the complaint refers to both the original informal car towing service list and the Chapter 225 list, the use of the word

"lists" can hardly have confused the Defendants or justified their denial of the allegation. Other that the use of the plural, the allegation of paragraph 25 is already established between the Town and the Plaintiffs by Finding of Fact 11, to which the court is respectfully referred.

30. Paragraph 2f of the Declaration: Again both the Findings and Defendant's own words show that the Defendants are making a mockery of their obligation for truthful pleading. The language that Martine's was a member in good standing of the original list is directly established by Finding 13. Furthermore, the Town repeatedly stated that Martine's was a member in good standing of the original list, for example:

> "3. ... admit that on and prior to March 25, 1993, plaintiff, Martine's Service Center, Inc., was on the rotating car towing service list so maintained by defendants." Exhibit 4, para. 3.
>
> "4. That plaintiff, Martine's Service Center, Inc., was on said list and was routinely called on a rotating basis with other towing companies." Exhibit 4, para.4.

31. Paragraph 2 g of the Declaration: In the first instance, Defendants misquote paragraph 29 of the Complaint, which provides that Supervisor Cummings acted "within" the scope of his authority, not "without". Furthermore, the allegations of paragraph 29 are all sustained by Findings 13 and 15. In light of those Findings, Defendants cannot seriously maintain that the allegations of paragraph 29 are "not clear".

32. Paragraph 2 h of the Declaration: Part of Defendants' studied ignorance of the facts is that they choose to ignore the difference between Plaintiff not having been given notice of the action to be taken and an opportunity to be heard with Supervisor Cummings' post facto notice of the action already taken by him. Again Defendants ignore a specific finding of fact. In this case, Finding 14.

33. Paragraph 2 i of the Declaration: This paragraph suggests that words in common legal usage have no meaning when applied to the Defendants. That is nonsense. There is no "characterization of 'charges'" by Plaintiff. They use the word in its ordinary meaning and as used in Finding 16. The balance of this paragraph does

not show the basis for a denial, but is merely argumentative. If Plaintiff were required to ask for a hearing, that is a matter of defense, not of denial. Furthermore, Defendants continue to confuse, as shown in paragraph 32, <u>supra</u>, notice of a hearing with notice of action taken without a hearing and without notice.

34. <u>Paragraph 2 j of the Declaration</u>: The allegations of paragraph 48 concerning the basis for the first federal action are not terribly significant, but the Defendants could easily have examined that Complaint to see if they are accurate. The objections to paragraph 50 are, on the other hand, disturbing. I do not know how to respond to the claim that I might have attached an inaccurate copy of the Chief Judge's decision to the complaint. I, too, am aware of my obligations under FRCP 11; and my integrity should not be so easily impugned as it has been on this motion. Also, Mr. Sokoloff sets forth no efforts to obtain what he calls a "full accurate, and completely exact copy of Judge Brieant's decision."

35. <u>Paragraph 2 k of the Declaration</u>: Again, it is difficult to understand what Defendants are actually saying about these paragraphs. These paragraphs contain no "characterizations and/or inferences", but only a minimum identification of the document involved. Defendants are not called to deny any "legal conclusions". Rather the only matters to be admitted or denied are whether the documents are correctly described and whether they are quoted accurately. Finally, it is hard to understand denial of "knowledge or information" as to documents served on the Town or created by the Town or are matters of public record. The extent of Defendants' continuing frivolousness is demonstrated by their stance in regard to paragraph 45 of the Complaint, which merely quotes the Town's Chapter 225. <u>Exhibit 7</u>. Either paragraph 45 accurately quotes Chapter 225 or it does not, but defendants cannot lack knowledge or information of Chapter 225 sufficient to form a belief as to the accuracy of the allegation.

36. <u>Paragraph 3 of the Declaration</u>: My belief that the Plaintiffs are entitled to an accurate statement of the posture of the case before making a settlement demand is before the Court. I believe that it is reasonable and in the best interests of the client. Because of the time constraints, set forth above, before the conference

scheduled for Friday morning, I cannot respond specifically to the cases and arguments cited at pages 8-9 of Defendants' Memorandum of Law. I can say, however, that I have not acted in" bad faith" or moved the "goal line" I have consistently told Mr. Sokoloff that I cannot make a settlement demand unless I know Defendants' position on the prior litigation and the continuing, effective judgment. Defendants' unilateral restoration of the Plaintiffs to the towing list in November 2007 demonstrates to me, at least, that Defendants' understanding of their obligations to Plaintiffs is central to the disposition of this case.

37. Paragraph 4 of the Declaration: Under New York law it is proper for a party to seek Freedom of Information materials under the Public Officers Law even when the person seeking FOIL information is in litigation with the government body. (In this specific instance, I request leave to submit law to that effect after the conference.) I have not violated any obligation not to contact the Town in regard to this litigation. Both the Town Attorney, Joseph McKay, and Homer Simpson, the Town's attorney in other pending litigation between the Town and Plaintiff, knew and know of my continuing FOIL demands. (All of my demands have been made after the commencement of these two pending litigations.) As shown in paragraph 34 of my moving affidavit, Mr. McKay has ruled that I am entitled to the materials, although the Town has never produced them.

Regarding Mr. Sokoloff's advice to the Town, I had no hand in obtaining that information. I made a FOIL demand; and the statement was the Town's response. The disclosure may or may not have been "inadvertent disclosure by the client [Town]", but it was not revealed through any act of mine.

38. Point I of Defendants' Memorandum: Plaintiffs are aware of the time constraints on this motion and have addressed them in paragraphs 46-49 of the moving affidavit and on page 5 of Plaintiffs' Memorandum. Mr. Sokoloff does not contest the facts, but merely tries to twist them so as to ignore his continuing promise to address the problems with the Defendants' Answer. Plaintiffs are aware that the motion is addressed to the Court's discretion and believe that the Court should grant it despite the 20-day rule.

39. <u>Point II of the Defendants' Memorandum</u>: Plaintiffs believe that the Defendants' gross disregard of their obligation of truthful pleading more than justifies the relief sought on this motion. Again, Plaintiffs understand that they are addressing the Court's discretion.

40. <u>Point III of Defendants' Memorandum</u>:

    a.  <u>Second Affirmative Defense: Qualified Immunity</u> The issue on this motion is not whether Defendants may have a pleadable qualified immunity defense, but rather: have the Defendants adequately pleaded such a defense under federal rules?  Defendants have not even tried to defend their pleading in response to Plaintiffs' citation to <u>Schecter vs Comptroller of the City of New York</u>, 79 F.3d 265, 269-270 (2nd Cir., 1996).

    b.  <u>Fourth Affirmative Defense; Improper Service</u>: Either the individual Defendants claim that they have not been properly served or they do not. Assuming that the Kimble estate does not know whether Mr. Kimble was properly served, the surviving Defendants know how they were served and their counsel can evaluate the adequacy of that service. Defendants claim in the title to this Point that they have a "legal and factual basis" for their affirmative defenses, but they cite no law and no facts in support of the fourth affirmative defense.

    c.  <u>Fifth Affirmative Defense; Lack of Personal Jurisdiction</u>: Defendants do not even attempt to defend their fifth affirmative defense. In any event, it is inadequate for the same reasons that the fourth affirmative defense should be dismissed.

    d.  <u>Seventh Affirmative Defense; Notice of Claim</u>: Plaintiffs do not merely "clarify" that there is no state claim. A reading of the Complaint would show to a professional that no such claim exists. Defendants' call for an open court stipulation is merely more of Mr. Sokoloff's attempts to thrust the Defendants' burdens onto the Court and the Plaintiffs.

41. <u>Point 1V of Defendants' Memorandum of Law</u>: In the first instance, I call to the Court's and Mr. Sokoloff's attention that the motion does not seek sanctions

against Mr. Sokoloff. It refers to FRCP 11 only as a standard of pleading. But Mr. Sokoloff's attack on me is merely another of his attempts to turn his own failures into his opponent's. Mr. Sokoloff has not demonstrated an objectively, reasonable investigation of the facts of the case before signing the Answer, the Declaration, and the Memorandum. The fact that he makes no attempt to sustain 42 of the denials is itself proof of his failure to make an adequate investigation. Mr. Sokoloff's attempt to hide behind the attorney-client privilege does not justify his continuing failure to find out what this case is about.

As for Mr. Sokoloff's attempt to turn the issue around to my conduct, I respectfully refer the Court to paragraph 36, supra.

42. Wherefore it is respectfully prayed that the Court grant Plaintiffs' motion in its entirety.


_____

STEPHEN L. OPPENHEIM (S0 6643)

Sworn to before me this
16th day of June, 2008


_____

NOTARY PUBLIC OF THE STATE
OF NEW YORK

against Mr. Sokoloff. It refers to FRCP 11 only as a standard of pleading. But Mr. Sokoloff's attack on me is merely another of his attempts to turn his own failures into his opponent's. Mr. Sokoloff has not demonstrated an objectively, reasonable investigation of the facts of the case before signing the Answer, the Declaration, and the Memorandum. The fact that he makes no attempt to sustain 42 of the denials is itself proof of his failure to make an adequate investigation. Mr. Sokoloff's attempt to hide behind the attorney-client privilege does not justify his continuing failure to find out what this case is about.

As for Mr. Sokoloff's attempt to turn the issue around to my conduct, I respectfully refer the Court to paragraph 36, supra.

42. Wherefore it is respectfully prayed that the Court grant Plaintiffs' motion in its entirety.


_____

STEPHEN L. OPPENHEIM (SO 6643)


Sworn to before me this
16th day of June, 2008


_____
NOTARY PUBLIC OF THE STATE
OF NEW YORK



CLIVE A. WHITE
MY COMMISSION EXPIRES
MARCH 17, 2012
01WH6183483
NEW YORK COUNTY
NOTARY PUBLIC, STATE OF NEW YORK

EXHIBIT 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------X
MARTINE'S SERVICE CENTER, INC. and MICHAEL
MARTINE,

                    Plaintiffs,

    -against-

THE TOWN OF WALLKILL and WILLIAM CUMMINGS,
individually and as Supervisor of the Town
of Wallkill,

                   Defendants.
--------------------------------------------X

**ANSWER**

94 CIV. 2013 (CLB)

    Defendants, by their attorney, MONTE J. ROSENSTEIN, ESQ., as
and for their Answer to plaintiffs' Complaint herein, alleges:

    1.  Deny knowledge or information sufficient to form a belief
as to each and every allegation set forth in paragraphs numbered
"1", "2", "6", "8", "14", "15", "21", "22", "31", "43", "49",
"52", "53", "54", "56" and "57" of plaintiffs' Complaint.

    2.  Deny each and every allegation set forth in paragraphs
numbered "12", "17", "24", "26","28", "29", "30", "36", "37",
"40", "44", "45", "47", "48", "50", "51", "55", "58", "59" and
"60" of plaintiffs' Complaint.

    3.  Deny each and every allegation set forth in paragraph
number "13", but admit that on and prior to March 25, 1993,
plaintiff Martine's Service Center, Inc. was on the rotating car
towing service list so maintained by defendants.

    4.  Deny each and every allegation set forth in paragraph
number "16", but admit that on March 25, 1993, defendant Cummings,
acting as Supervisor of defendant Town of Wallkill, within the
scope of his authority, orally removed plaintiff Martine's Service
Center, Inc. from the car towing list.

5.    Deny each and every allegation set forth in paragraph number "19", but admit that no written charges were brought against the plaintiff.

6.    Deny each and every allegation set forth in paragraph number "20", but admit that no hearing was held.

7.    Deny each and every allegation set forth in paragraph number "23", but admit defendant Cummings conversed with the media.

8.    Deny each and every allegation set forth in paragraph number "25", but admit that there are no written standards for removal of members of the car towing service list from the list.

9.    Deny knowledge or information sufficient to form a belief as to each and every allegation set forth in paragraph number "38", but admit that defendant Cummings, at all times relevant hereto, was the Supervisor of the defendant Town of Wallkill.

10.    Deny each and every allegation set forth in paragraph number "39", but admit defendant Cummings as Supervisor and chief executive officer directly participated in removing plaintiff's name from the towing list.

## AS AND FOR FIRST AFFIRMATIVE DEFENSE

11.    That, upon and information and belief, any claims for defamation or intentional infliction of emotional distress or other State claims alleged in the Complaint herein are barred by the plaintiff's failure to serve a proper Notice of Claim within 90 days of the date of the occurrence herein and must be dismissed accordingly.

## AS AND FOR SECOND AFFIRMATIVE DEFENSE

12.    That the so-called "rotating list" of car towing services used by the Town of Wallkill was solely for its own use in

attempting to distribute towing referrals equitably to towing services within the Town and was not any official list established pursuant to law or ordinance and no hearing or charges were necessary to remove any company or individual from said list and plaintiff's claim regarding same must be dismissed as a matter of law.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

13. That, in fact, the defendant William Cummings advised the plaintiff of the allegations made against him with regard to his towing service by others and afforded the plaintiff the right to discuss the matter and dispute any such allegations and the plaintiff's failure to properly comply with said request and his temporary removal from the list thus resulted from his own inaction and negligence and was justified in all respects.

14. That any actions performed by the defendant William Cummings herein were performed in good faith, without malice, and with probable cause to believe he was acting in the best interest of the Town and were performed in his executive and legislative capacity as the Town Supervisor and by virtue of same, said acts were and are entitled to total immunity and the Complaint herein is barred accordingly.

WHEREFORE, defendants demand Judgment dismissing the Complaint together with the costs and disbursements of this action.

Dated:   March 29, 1994
         Middletown, New York

MONTE J. ROSENSTEIN, ESQ.  (7673)
Attorney for Defendants
501 East Main Street
P.O. Box 3016
Middletown, New York 10940

TO:    STEPHEN L. OPPENHEIM, ESQ.
       Attorney for Plaintiffs
       253 Broadway
       P.O. Box 29
       Monticello, New York 12701

EXHIBIT 5

# STEPHEN L. OPPENHEIM
## Attorney at Law
253 Broadway · Post Office Box 29
Monticello, NY 12701
(914)794-7111   Fax:(914)794-1272

Stephen L. Oppenheim
--------
James N. Oppenheim


April 7, 1994

Rosenstein & Helhoski, P.C.
501 East Main Street
P.O. Box 3016
Middletown, NY    10940

    Re:  Martine's Service Center, Inc. v. Town of Wallkill

Gentlemen:

    I am in receipt of your answer in this matter and suggest that some of your denials and the counterclaims are inconsistent with your obligations under F.R.C.P. Rule 11.  Specifically, I call to your attention the following:

    Paragraph 8:  (a) This paragraph alleges a specific conduct of the defendants.  It is inconsistent that the defendants plead lack of information or knowledge.  They must know that they either did or did not do the act alleged; (b) these facts were specifically found as finding of fact number 7 in the State action; therefore, it is inappropriate for the defendants to deny the facts alleged.

    Paragraph 12:  It is inappropriate for defendants to deny this paragraph since the facts therein were specifically found in finding of fact number 11 in the State action.

    Paragraph 13:  It is inappropriate for defendants to deny any part of this paragraph since the facts were specifically found in finding number 12 in the State action.

    Paragraph 16:  It is inappropriate for defendants to deny any part of this paragraph since the facts were specifically found as finding number 13 in the State action.

Page 2

Paragraph 17:  It is inappropriate for the defendants to deny this paragraph since the facts were specifically found in finding number 14 in the State action.

Paragraph 19:  It is inappropriate for defendants to deny any part of this paragraph since the facts were found in finding number 16 in the State action.

Paragraph 20:  It is inappropriate for defendants to deny any part of this paragraph since the facts were found in finding number 17 in the State action.

Paragraph 21:  It is inappropriate for defendants to deny knowledge or information regarding this paragraph since the facts were found in findings numbers 18 and 20 in the State action.

Paragraph 22:  It is inappropriate for defendants to deny knowledge or information of the allegations of this paragraph, (a) since the allegations relate to defendants' conduct, which they must know about, either having done or not done anything to restore Martine's Service Center, Inc. to the car towing service list, and (b) in light of finding number 19 in the State action.

Paragraph 23:  It is inappropriate for defendants to deny any part of this paragraph in light of finding number 22 in the State action.

Paragraph 24:  It is inappropriate for defendants to deny paragraph 24 as it pertains to Martine's Service Center, Inc. in light of finding number 23 in the State action.

Paragraph 25:  It is inappropriate for defendants to deny any part of this paragraph in light of finding number 24 in the State action.

Paragraph 26:  It is inappropriate for defendants to deny this paragraph as it pertains to Martine's Service Center, Inc. in light of finding number 25 and conclusion of law number 1 in the State action.

Paragraph 28:  It is inappropriate for defendants to deny this paragraph in light of finding number 27 in the State action.

Paragraph 29:  It is inappropriate for defendants to deny this paragraph in light of finding number 28 in the State action.

Paragraph 30:  It is inappropriate to deny this paragraph in light of finding number 29 in the State action.

Page 3

Paragraph 31:  It is inappropriate for defendants to deny knowledge or information regarding filing of the notice of claim; either their records show the notice was filed or they do not. Likewise, it is inappropriate for defendants to deny knowledge or information of the State action, particularly in light of their admission of the allegations contained in paragraphs 32, 33, 34, and 35 of the complaint.

Paragraph 36:  In light of the findings and conclusions in the State action and the admissions of the allegations of paragraphs 3, 4, 5, 7, 9, 10, 11, 13, 18, 19, 20, 23, 25, 32, 33, 34, 35, 38, 39, 41, and 42 of the complaint, it is inappropriate for defendants to deny that the acts complained of were all done under color of State law or, as to plaintiff Martine's Service Center, Inc., that its due process rights were denied by the conduct.

Paragraph 37:  In light of the said findings, conclusions and admissions, it is inappropriate for defendants to deny any of the allegations of this paragraph; see particularly findings 2, 3, 7, 8, 12, 28, and 29.

Paragraph 39:  Likewise it is inappropriate for defendants to deny, as to Martine's Service Center, Inc., the allegations of paragraph 39; see, in addition, findings 13, 14, 15, 16, 17, 18, 19, 20, 21, and 22.

Paragraph 43:  It is inappropriate for defendants to deny knowledge or information of the allegations of this paragraph which relate to their own conduct:  either they did or they did not make referrals during the period referred to.

Paragraph 44:  It is inappropriate for defendants to deny this paragraph as to Martine's Service Center, Inc. (except as to its costs in having its name restored to the list and the declaration of unconstitutionality and illegality) in light of finding 23 in the State action.

Paragraph 45:  It is inappropriate for defendants to deny the allegations of this paragraph, as to Martine's Service Center, Inc., in light of finding 25 in the State action.

First Affirmative Defense:  It is inappropriate for you to allege failure to file a notice of claim where defendants' own files show to the contrary.  Notice of claim was filed on June 23, 1993, asserting not only the due process claim, but also claims for "libel and slander".  (Paragraph 2).

Page 4

  Second Affirmative Defense:  This defense is inappropriate both in light of your admission as to the allegations of paragraphs 7, 9, 10, 11, 13, 34, 35, 38, 39, 41, of the complaint and findings 6, 7, 8, 9, 10, 11, 23, 24, 28, and 29 in the State action, as well as conclusion numbers 1 and 2.

  Third Affirmative Defense:  This affirmative defense is inappropriate, (a) in light of the judgment in the State action and (b) because there is no "total immunity" to the causes of action or either of them.

  I call upon you to serve an amended answer consistent with your certification under F.R.C.P. Rule 11.

       Very truly yours,


       Stephen L. Oppenheim

SLO/law

EXHIBIT 6

To commence the statutory time for appeals as of right (CPLR 5513[a]), you are advised to serve a copy of this order, with notice of entry, upon all parties.

SUPREME COURT - STATE OF NEW YORK

TRIAL / SPECIAL TERM PART-ORANGE COUNTY

PRESENT: _____HON. LOUIS A. BARONE_____
                                                    Justice

SUPREME COURT: ORANGE COUNTY
- - - - - - - - - - - - - - - - -X
MARTINE'S SERVICE CENTER, INC.,

                    Petitioner,                    Index No.: 4069-93

    - against -                                    Motion
                                                   Date: May 27, 1994
THE TOWN OF WALLKILL, WILLIAM CUMMINGS
as Supervisor of the Town of Wallkill,
THE TOWN BOARD OF THE TOWN OF WALLKILL
and the POLICE DEPARTMENT OF THE TOWN
OF WALLKILL,

                    Respondents.
- - - - - - - - - - - - - - - - - -X

The following papers numbered 1 to 16 read on this motion to vacate and/or modify certain findings of fact and conclusions of law.

        Notice of Motion - Affidavits              1,2,
        Answering Affidavits                       5,
        Pleadings-Exhibits-Stipulations-Minutes    3,4,6-16.

Upon the following papers, it is ordered that this motion is decided as follows:

Defendants move to have the Court vacate and/or modify certain findings of fact and conclusions of law entered herein on October 22, 1993. Plaintiff interposes opposition.

Pursuant to CPLR Section 5015(a), the Court which rendered an order may modify or vacate same upon one or more of five grounds;  (1) excusable default; (2) newly discovered evidence; (3) fraud, misrepresentation or misconduct of an adversary; (4) lack of jurisdiction; and (5) reversal, modification or vacation of a prior judgment or order upon which this order is based.

None of the numerated grounds exist in the case at bar.  Defendants had a noticed opportunity to correct any inclusion in the findings which they believed was incorrect.  This they did not do.

Defendants' motion is denied in all respects.

This constitutes the order of this Court.

Dated:  June 9 , 1994          E N T E R,

                                       _____
                               HON. LOUIS A. BARONE, J.S.C.

EXHIBIT 7

[HISTORY: Adopted by the Town Board of the Town of Wallkill 2-25-1999 by L.L. No. 1-1999. Amendments noted where applicable.]

**GENERAL REFERENCES**
Abandoned vehicles — See Ch. 230.
Vehicles and traffic — See Ch. 233.
Removal of vehicles — See Ch. 237.

## § 225-1. Intent.

The intent of this chapter is to provide for the prompt and safe removal of vehicles at reasonable rates to prevent traffic hazards or secondary accidents as a result of vehicles being on or near public roadways and to protect the public from excessive charges by towers.

## § 225-2. Towing list.

There shall hereby be established a towing list which shall contain the names, addresses and phone numbers of towers with businesses within the Town of Wallkill or those with businesses outside the town who are on the current list of towers who are able to respond promptly and who meet all other requirements set forth below. In order to assure prompt and efficient service following the enactment of this chapter, no tower having a place of business outside the Town of Wallkill will hereinafter be eligible to be on the towing list, and those on the current towing list with businesses outside of the town must establish a towing facility business in the town within six months by either leasing or owning such facility with an office therein solely for such business. The name of the towing list principal owner or major stockholder of each towing company shall appear on the list, and he shall be required to obtain an annual permit as set forth below. If said individual conducts business under several different names, either individually or as a corporation or otherwise, he shall not be entitled to separate listings of each business on the rotating list.

## § 225-3. Priority of calls.

Due to the need for prompt removal of vehicles when a request is made for a tower, towers shall be selected on a rotating basis by the dispatcher from the primary list.

## § 225-4. Additional eligibility requirements; regulations.

The additional requirements for placement on the towing list shall be as follows:

A. All tow truck owners and operators must obtain an annual permit from the town to conduct towing operations therein at an annual cost of $125 for one vehicle. There shall be a charge of $45 for each additional vehicle to be used for towing. Each tower must provide a list of each towing vehicle to the town. Towers will be monitored annually to assure compliance with this chapter.

B. With the exception of any tower on the current towing list already having a towing facility in the town, the headquarters of the tow truck operators must be within the Town of Wallkill, and the vehicles must regularly be kept within the town at said facility.

C. All operators must produce proof that each vehicle licensed for tow truck operations within the town shall have a minimum insurance coverage of $500,000 for any one individual and $1,000,000 for any one accident.

D. All tow truck operators must be duly licensed, and all vehicles must carry proof of a current permit at all times and must be in good operating condition.

E. All tow truck operators will be placed on a rotating schedule and must respond to the scene of any service call within 25 minutes. The Town Police Department will maintain the rotating list and make all calls and keep records thereof.

F. All tow truck operators must maintain proper records of all fees received, which will be available for inspection by the town.

G. In the event that the town receives a complaint regarding any alleged excessive or exorbitant fee, the town shall have a right to investigate the same and to take appropriate action with respect thereto.

H. Any towing operator must respond when called, and failure to respond or to meet other requirements of this chapter may result in suspension or revocation of a permit or other appropriate penalty at the discretion of the Chief of Police after affording the tower the right to a hearing with respect thereto, with an attorney and formal written

I.  Unless called, no tow truck will respond to the scene of any accident except in an emergency.

J.  All tow truck owners and operators must be in compliance with all local laws, rules and regulations of the New York State Department of Transportation (DOT) motor vehicle laws, Federal Motor Carrier Safety Regulations and Title 49 Code of Federal Regulations, (see attached Addendum Editor's Note: Said Addendum is available at the town offices. ) with respect to his towing facility, and failure to be in compliance will preclude being on the list until all compliance is met. Anyone not in compliance will have 45 days in which to meet compliance after notice by certified mail. During said period, the tower will remain on the towing list. This time period will not apply to compliance with the eligibility requirements under § 225-4 herein.

K.  Any tow truck owners on the current unofficial towing list shall automatically be placed on the new towing list established by this chapter.

L.  All vehicles towed shall be towed to a facility in the Town of Wallkill unless other arrangements have been made with the customer.

## § 225-5. Appeals.

Any suspension or revocation of a town's permit may be appealed by filing written notice of appeal with the Town Supervisor within 10 days of the date of the notice of suspension or revocation. Determination of appeal should be made by the Town Board following a hearing within 30 days of receipt of the appeal.

## § 225-6. Right to call towers not on towing list.

Nothing within this chapter shall prevent a vehicle owner from choosing to call a tower who is not on the town towing list; provided, however, that should that tower be unable to respond in a reasonable period of time and the police officer at the scene has safety concerns, the officer may supersede the desires of the owner and call a tower on the list.

## § 225-7. Duty to prove eligibility; updating of towing list.

All towers desiring to be on the towing list must provide the Town Police Department with proof of all of the requirements set forth herein in advance of the effective date of this chapter. Following the establishment of the initial towing list, the town will update the list, based upon any new applications, on a semiannual basis, January 1 and July 1 of each year.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARTINE'S SERVICE CENTER, INC. AND
MICHAEL C. MARTINE,

                    PLAINTIFFS,

                              AFFIDAVIT
                              OF SERVICE

VS.

THE TOWN OF WALLKILL, JOHN WARD, individually
and as Supervisor of the Town of Wallkill, ROBERT DUBNIAN,
individually and as Chief of Police of the Town of Wallkill,
EUGENE JAQUES, individually and as Building Inspector of
the Town of WORLD, DON KIMBELL, individually and as
Deputy Building Inspector of the Town of Wallkill,
WALTER FRANCOTT, individually and as Assistant
Building Inspector of the Town of Wallkill, and JOHN DOES I, II,
and III, individually and as officers of the Town of Wallkill,

CASE No.
07-CV-7622 (SCR)

                    DEFENDANTS

State of New York          SS.
County of New York

Stephen E. Oppenheim, being duly sworn, deposes and says: On the
16th day June, 2008, I personally served a copy of the attached Reply
affidavit on Brian S. Sokoloff, Esq. Miranda, Sokoloff Sambursky Slone and
Verveniotis LLP, Attorneys for Defendants The Esposito Building
240 Mineola Boulevard, Mineola, New York 11501,
postage prepaid at a United States Post Office in New York, New York.

                    STEPHEN E. OPPENHEIM (SO66151)

Sworn _____ 16th day of June 2008

                    NOTARY PUBLIC